STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| | { | |
| In re Susan Lee Living Trust Corrective Permit | { | Docket No. 94-7-12 Vtec |
| | { | |

## Decision on the Merits

Michael Smith, Donna Smith, William Shafer, and Susan Shafer (Appellants) appeal a June 21, 2012 decision by the Town of Waitsfield Development Review Board (the DRB) upholding the Zoning Administrator's grant of Zoning Permit #3438 to Susan B. Lee Living Trust (Applicant) authorizing construction of a single family residence at 38 Deerfield Drive in the Town of Waitsfield, Vermont (the Town).

The Court conducted a site visit at the subject property and surrounding area on the morning of September 26, 2013 followed by a one-day merits hearing at the Vermont Superior Court, Environmental Division in Berlin, Vermont. Appearing at the site visit and merits hearing were Appellants Michael Smith, Donna Smith, William Shafer, Susan Shafer, and their attorney Mark Hall, Esq.; Appellee Susan Lee and her attorney Christopher Nordle, Esq.; and Joe McLean, Esq., attorney for the Town.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.  In April 2005, "Susan Lee (Trust)" filed a subdivision application with the Town to subdivide a 2.2-acre lot into two 1.1-acre lots.

2.  The two lots are located in the Town's Agricultural-Residential Zoning District.

3.  In a July 19, 2005 decision, the Town's Planning Commission approved the subdivision with conditions (Subdivision Approval).

4.  Condition 2 of the Subdivision Approval states: "[a] screening and landscaping plan must be submitted to the Planning Commission for approval by the developer prior to development."

5.  On June 21, 2011, "Susan B. Lee Living Trust" applied for a Zoning Permit to construct a single family home with an attached garage on one of the two subdivision lots. The Town assigned this application number 3380 (ZP Application 3380).

6.  ZP Application 3380 proposed a 27-feet-high structure with an 18-feet-high attached garage and 2,736 total square feet. This application included setback dimensions which were later determined to be in error. With respect to building height, the application specifically noted that the design was not finalized and that overall the house would be less than 27 feet tall.

7.  ZP Application 3380 was referred to the DRB for review of the screening and landscaping plan required by condition 2 of the Subdivision Approval.[1] While ZP Application 3380 was being processed and considered, Susan Lee, Michael Smith, and Donna Smith agreed to a screening and landscaping plan with the assistance of Ed Read of the Mad River Garden Center. A material consideration in the Smiths' agreement was the representation that the house height would not exceed 27 feet. The parties filed separate letters with the DRB indicating their agreement on screening and landscaping. Mr. Read provided a marked-up site plan and e-mail on the details of the screening and landscaping plan to the DRB.

8.  On September 24, 2011, the DRB approved the screening and landscaping plan for Zoning Permit 3380 (DRB Approval).

9.  On November 18, 2011, the Town Zoning Administrator (the Town ZA) granted Zoning Permit 3380 (ZP 3380).

10. Both the DRB Approval and ZP 3380 expressly describe the screening and landscaping plan the parties agreed to. In essence, the plan required the planting of 5 evergreen trees in a staggered pattern along the 50-foot common boundary of the Trust and the Smiths. Finding of Fact number 2 of the DRB Approval states: "[t]he proposed structures in the underlying zoning permit application are permitted uses under Section 2.03 Agricultural-Residential District (Table 2.07) of the bylaws but the Subdivision Approval required approval by the PC (now the Development Review Board) prior to development."

---

[1] Following the Subdivision Approval in 2005, the DRB received jurisdiction over subdivision approvals.

11. On January 20, 2012, "Susan B. Lee Trust" filed another Application for a Zoning Permit. The Town assigned this application number 3420 (ZP Application 3420). ZP Application 3420 adjusted setback dimensions, increased the house height to 32 feet, and increased the total square footage to 3,024 square feet for an enlarged garage.

12. On January 24, 2012, the Town ZA granted Zoning Permit 3420 (ZP 3420) with the same conditions as ZP 3380. The Zoning Permit placard expressly notes that the approval was for a 288 square foot extension of garage; it does not indicate any change in height.

13. The Town sent a Notice of Violation letter, dated April 5, 2012, notifying the applicant that the house, as built, did not comply with the height and setback requirements of Zoning Permit 3420.

14. On April 10, 2012, "Susan B. Lee Living Trust" filed another Application for a Zoning Permit. The Town assigned this application number 3438 (ZP Application 3438). This application was filed to resolve the Notice of Violation of ZP 3420. This application increased the building height to 35 feet, slightly adjusted the total square footage, and reduced the setback from the Smith's property from 35 feet to 30.9 feet.

15. The Town ZA granted Zoning Permit 3438 (ZP 3438) on April 12, 2012. The Zoning Permit placard expressly notes that the approval was for a 3,015-square-foot, 35-foot-high single family home.

16. As-built, the subject house is wholly within the building envelope as established by the Subdivision Approval.

17. The height of the as-built house measured from the top of the foundation to the top of the ridge is 30 feet 8 inches. Averaging the height of the house from the highest and lowest finished grades results in an average building height of 34 feet 11 inches.

18. Michael and Donna Smith and Bill and Susan Shafer appealed ZP 3438 to the DRB. In a June 21, 2012 decision, the DRB denied the appeal.

19. Appellants timely appealed the DRB denial to this Court.

## Conclusions of Law

Appellants' first two questions within their Revised Statement of Questions ask:

1. Whether a [sic] zoning permit #3438 authorizing a change in location, size, and height of the residence is lawful without corresponding changes to site plan conditions previously imposed to expressly provide screening for a neighboring property?

2. Whether zoning permit #3438 can be issued administratively approving material changes to the size and height of a building that is subject to conditions imposed on the site plan relative to its visibility from a neighboring property?

(Revised Statement of Questions at 1, filed Mar. 15, 2013.)

Authorization from the Town to develop the subject site derives from the Subdivision Approval and ZP 3438.[2] The Subdivision Approval, which is final and not on appeal, expressly requires that a screening and landscaping plan be submitted to the Town for approval prior to development. At the time of the Subdivision Approval, Applicant had not yet finalized plans for the house. Once Applicant finalized house plans, an application for a zoning permit was filed with the Town. ZP Application 3380, the first of a series of zoning permit applications, was referred to the DRB solely for the DRB's review and consideration of the screening and landscaping plan. Applicant worked cooperatively with Appellants and designed a screening and landscaping plan agreeable to all parties. Applicant filed this plan with the DRB. At the time the screening and landscaping plan was designed and agreed to, the proposed house height was 27 feet. Appellants credibly testified that the height of the house was a material consideration in their assenting to the screening and landscaping plan. The DRB approved the screening and landscaping plan. Thereafter, the ZA granted ZP 3380.

Applicant installed the screening and landscaping and built the subject house. In response to the Town's letter notifying Applicant of the ZP 3380 violation, Applicant filed ZP Application 3438 seeking approval of a 35-foot-high house, a slight increase in total square footage, and a reduced setback from the Smith's property. Appellants raised their concern that due to these modifications, and particularly due to the increased house height, the previously agreed-to screening and landscaping plan was no longer sufficient. The Town declined to further review the screening and landscaping plan.

Again, the Subdivision Approval, and specifically condition 2 therein, is not challenged in this appeal. Rather, Appellants challenge the authority of the ZA to issue a zoning permit which, in Appellants' view, does not comply with condition 2 of the Subdivision Approval. All parties agree that condition 2 was satisfied with regard to ZP Application 3380. Appellants assert that condition 2 was not satisfied with respect to ZP Application 3438 because there was no review of a screening and landscaping plan for that application for a taller house.

---

[2] ZP 3438 supersedes the two earlier permits, ZP 3380 and ZP 3420.

4

Applicant argues that the DRB reviewed and approved a screening and landscaping plan as part of the Town's review of ZP Application 3380 which did not contain any restrictions on building height. Applicant also notes that the DRB did not impose any conditions regarding the building height as part of its screening and landscaping plan approval. While we agree with these facts, we decline to adopt Applicant's conclusion that no further review of a screening and landscaping plan for the 35-foot house is required.

The Waitsfield Zoning Administrator has authority to issue zoning permits for permitted uses, however, the Town of Waitsfield Zoning Bylaw (WZB) provides that all development must comply with any prior permits or approvals. WZB Art. VI, § 6.01(C)(3). The WZB also expressly states that no zoning permit shall be issued until required DRB approvals have been received. Id. at Art. VI, § 6.01(C)(1). Pursuant to condition 2 of the Subdivision Approval, the DRB reviewed a screening and landscaping plan relating to ZP Application 3380 for construction of a 27-foot-high structure. This plan was acceptable to the Appellants with the understanding that the structure was to be 27 feet high. Thus, Appellants did not contest the screening and landscaping plan during the DRB's review.

ZP Application 3438, which is presently before the Court, seeks approval for a 35-foot-high structure. A taller structure could require different screening and landscaping to protect Appellants' interests. The DRB has not considered screening or landscaping needs for the 35-foot-tall structure. Thus, Applicant has not yet received DRB approval, pursuant to condition 2 of the Subdivision Approval, of a screening and landscaping plan for the 35-foot structure. We therefore conclude that the Zoning Administrator did not have the authority to issue ZP 3438 without approval of a screening and landscaping plan for that application. To hold otherwise could lead to the irrational result of a "screening plan" wholly unrelated to the structures intended to be screened. See In re Pierce Subdivision Application, 2008 VT 100, ¶ 8, 184 Vt. 365 (holding that courts should avoid interpretations that lead to irrational results). DRB review and approval of a screening and landscaping plan for the 35-foot-high structure is required. For these reasons, we **VOID** ZP 3438 and remand this matter back to the Town.

Question 3 of Appellants' Revised Statement of Questions asks:

3. Whether the height of the house complies with the ordinance?

(Revised Statement of Questions at 1, filed Mar. 15, 2013.)

5

The maximum building height for structures within the Agricultural-Residential District is 35 feet. WZB Table 2.07(D). The WZB defines "building height" to be "[t]he height of a building or structure as measured vertically from the highest point on top of the building or structure . . . to the average (of the highest and lowest) finished grade at the foundation or base . . . ." WZB Art. VII. Definitions. Based upon the evidence before the Court, the as-built structure has a "building height" of 34 feet 11 inches under this definition. We therefore conclude that the height of the house complies with the ordinance.

Question 4 of Appellants' Revised Statement of Questions asks:

4.  Whether adequate notice was given to interested parties of changes in the site plan and the home prior to the issuance of a zoning permit?

(Revised Statement of Questions at 1, filed Mar. 15, 2013.)

Appellants timely appealed ZP 3438, first to the DRB and then to this Court. The Appellants primarily allege deficient notice as to ZP 3420. ZP Application 3438 superseded ZP 3420. To the extent that deficient notice is also alleged for ZP 3438, that application was timely appealed. Because we remand this matter back to the Town for the DRB's review and consideration of a screening and landscaping plan for the 34-foot 11-inch-high structure proposed by ZP Application 3438, the question of notice to interested persons is moot.

## Conclusion

For the reasons discussed above, we conclude that although the Waitsfield Zoning Administrator has authority to issue zoning permits for permitted uses, under the Town of Waitsfield Zoning Bylaw all development shall comply with any prior permit or approval and no zoning permit shall be issued until required approvals of the DRB have been received. Applicant has not yet received DRB approval, pursuant to condition 2 of the Subdivision Approval, of a screening and landscaping plan for the 35-foot-high structure proposed in ZP Application 3438. We therefore conclude that the Zoning Administrator did not have the authority to issue ZP 3438. For these reasons, we **VOID** ZP 3438 and **REMAND** this matter back to the Town and direct the DRB to review and approve a screening and landscaping plan for the as-built 34-foot 11-inch-high structure. Once the DRB approves a screening and landscaping plan, the Zoning Administrator may thereafter re-issue ZP 3438.

We also conclude that the height of the house complies with the ordinance and that the question of notice to interested persons is moot.

6

This completes the current proceedings before this Court.

Done at Berlin, Vermont, this __ day of March, 2014.

 

 

_____

Thomas G. Walsh, Environmental Judge